IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

VINCENT P. DAVIS,

    Plaintiff,

v.       //   CIVIL ACTION NO. 1:12CV53
           (Judge Keeley)

CITY OF SHINNSTON, RICK
BARNHART, and DEBRA HERNDON,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' CITY
OF SHINNSTON, RICK BARNHART AND DEBRA HERNDON'S MOTION
TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 19] AND DISMISSING CASE WITH PREJUDICE**

  Pending before the Court is the defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Dkt. No. 19). The defendants, the City of Shinnston ("Shinnston"), Lieutenant Rick Barnhart ("Lt. Barnhart"), and Debra Herndon ("Debra Herndon") (collectively, the "defendants"), seek a declaration that they are not liable to the plaintiff, Vincent P. Davis ("Davis"), for any deprivation of his civil rights in violation of 42 U.S.C. § 1983, or for conspiracy, malicious prosecution, or intentional or reckless infliction of emotional distress. (Dkt. No. 20). For the reasons that follow, the Court **GRANTS** the defendants' motion (Dkt. No. 19).

## I. FACTUAL & PROCEDURAL BACKGROUND

  The material facts are largely undisputed and all inferences to be drawn from the facts have been considered in the light most

DAVIS V. CITY OF SHINNSTON, ET AL.                          1:12CV53

MEMORANDUM AND OPINION

favorable to the plaintiffs.  Matsushita Electrical Industrial Co.,
Ltd. v. Zenith Radio Corp., 574, 574 (1986).

Chris and Tina Herndon ("the Herndons") own a home located in
Shinnston, West Virginia.  On August 12, 2009, they entered into a
contract with Davis for construction services on their home.  Those
services included removing old shingles and two chimneys, and
installing a new drip edge, new black paper, shingles, a new solar
roof vent and gutters.  Pursuant to the terms of the contract, the
Herndons were to pay Davis a total of $8,300 for labor and
materials according to the following schedule: $4,400 up front;
another $1,950 when the shingles were completed; and the remaining
balance of the contract upon completion of the job.  The Herndons
contend that Davis failed to completely install the gutters by
early 2010, as the contract required.

On September 9, 2009, the Herndons entered into a second
contract with Davis to rebuild their front and side porches in
which they agreed to pay Davis a one-time sum of $5,000 for labor
and materials.  They contend that Davis failed to adequately
rebuild their porches as required under the terms of their
contract. For his part, Davis does not dispute that he did not
complete the contracts as the parties had contemplated.

2

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

On April 19, 2010, the Herndons called 911 to report that Davis's employees were removing lumber from their property without permission. Lt. Barnhart responded to the call and advised the employees to return the lumber. While at the residence, he also talked to the Herndons and learned that they had paid Davis for materials and work he had not performed.

Sometime following this, Debra Herndon, who is Chris Herndon's mother, and also the City Manager for Shinnston, advised Lt. Barnhart that he should further investigate the Herndons' complaints about Davis. Following that conversation, the Herndons met with Lt. Barnhart on May 2, 2010 and provided him with written complaints, copies of calendar dates, copies of payments and statements, inspection reports, as well as the initial proposal from Davis. Lt. Barnhart drafted an incident report later that same day, and sent it to Harrison County Assistant Prosecuting Attorney Kurt Hall ("APA Hall") together with "the statements of Chris and Tina Herndon, copies of calendar dates, copies of payments and statements, the results of building inspection conducted by Code Enforcement Officer Rick McElroy, the initial proposal from Davis, the new estimate to finish the job, and two CD-Rs consisting of pictures of the victims' home before, during, and after the work performed by the Plaintiff." (Dkt. No. 28 at 2-3).

3

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

<u>MEMORANDUM AND OPINION</u>

On May 28, 2010, APA Hall advised Lt. Barnhart that, in his opinion, Davis had violated W. Va. Code § 61-3-24. Barnhart then signed a criminal complaint alleging that Davis had accepted money from the Herndons under false pretenses. Specifically, the criminal complaint stated that "[a]s of this date the defendant has not returned to finish construction on the house." (Dkt. No. 24-7 at 2). The complaint concluded with the statement that, although the Herndons had paid Davis "the sum of $16,700 . . . the Defendant has not complete[d] the contracts, this being [a violation of W. Va. Code § 61-3-24]." <u>Id</u>.

Magistrate Warren Davis later issued an arrest warrant for Davis who, on June 19, 2010, was arrested and arraigned in the Magistrate Court of Harrison County, where bond was set at $10,000. Due to his arrest, Davis's parole for an unrelated charge also was revoked. Because he was unable to post bond and his parole had been revoked, Davis remained incarcerated throughout the pendency of his criminal proceedings.

On June 28, 2013, Davis waived his right to a preliminary hearing. On September 1, 2010, Magistrate Judge Warren Davis found probable cause for the case to be bound over to the Circuit Court of Harrison County, where a grand jury returned an indictment charging Davis with Fraudulent Schemes in violation of W. Va. Code

4

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

§ 61-3-24(d). He proceeded to trial and, on March 29, 2011, a jury returned a verdict of "not guilty" on all charges contained in the indictment. Following that, on May 11, 2011, Davis was released from custody.

He then filed a complaint in this case on March 28, 2012, in which he alleged that he had spent almost ten months in jail as a result of a "wrongful arrest and prosecution." Davis claims that his "wrongful arrest and prosecution" makes the defendants liable to him for deprivation of his civil rights in violation of 42 U.S.C. § 1983, conspiracy, malicious prosecution, and intentional and/or reckless infliction of emotional distress. On October 17, 2012, the defendants moved for summary judgment as to all of Davis's claims. That motion is now fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

6

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

<u>MEMORANDUM AND OPINION</u>

### III. ANALYSIS

**A.** *Federal Claims*

**1. 42 U.S.C. § 1983**

As Davis's claims all depend on the fate of his 42 U.S.C. § 1983 claim, the Court first turns its attention there.  In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must establish that a defendant: (1) was acting under color of state law, and (2) deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. <u>Crosby v. City of Gastonia</u>, 635 F.3d 634, 639 (4th Cir. 2011).

In laying out his § 1983 claim in the complaint, Davis alleges that "[t]he conduct of Defendant Rick Barnhart and Defendant Debra Herndon, as alleged herein, deprived Plaintiff of his civil rights, including the rights secured to him and guaranteed to him under Amendments IV, V, VI and XIV of the United States Constitution[.]" (Complaint ¶ 31).[1] In his response to the defendants' motion, however, Davis repeatedly states that his § 1983 claim "is based on the absence of probable cause to support his arrest and prosecution." (Dkt. No. 24 at 13). Hence, contrary to the

---

[1] The complaint also alleges in Count I that the defendants violated  state constitutional provisions and state statutes, but state law violations are not cognizable in  § 1983 actions.

7

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

allegations in the complaint, his § 1983 claims are most appropriately evaluated under the Fourth Amendment's right to be free from unreasonable search and seizure.

The Fourth Circuit has recognized two distinct causes of action under § 1983 for violations of a person's Fourth Amendment right against unreasonable seizure. See Brooks v. Winston–Salem, 85 F.3d 178, 181–82 (4th Cir. 1996) (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). One of these is a cause of action for false or unlawful arrest or arrest without legal process. See Wallace v. Kato, 549 U.S. 384, 389 (2007). Such a cause of action cannot be pursued, however, when a person has been arrested based on a facially valid warrant. See, e.g., Bellamy v. Wells, 548 F.Supp.2d 234, 237 (W.D. Va. 2008); Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("a claim for false arrest may be considered only when no arrest warrant has been obtained"); see also Dorn v. Town of Prosperity, 375 F. App'x 284, 286 (4th Cir. 2010) ("The distinction between malicious prosecution and false arrest . . . is whether the arrest was made pursuant to a warrant.").

The other cause of action recognized for a violation of a person's Fourth Amendment right against unreasonable seizure is a claim for "malicious prosecution" or abuse of judicial process. See Brooks, 85 F.3d at 182 ("[A]llegations that an arrest made pursuant

8

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution."). The Fourth Circuit, however, has stated that "there is no such thing as a '§ 1983 malicious prosecution claim.' What we termed a 'malicious prosecution' claim in Brooks is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution — specifically, the requirement that the prior proceeding terminate favorable to the plaintiff." Snider v. Lee, 584 F.3d 193, 199 (4th Cir. 2009) (quoting Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000)). Nevertheless, both Fourth Circuit and lower court cases have continued to identify these claims as "malicious prosecution" claims. See Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012); Martin v. Conner, 882 F. Supp. 2d 820 (D. Md. 2012); Davis v. Back, No. 3:09CV557, 2010 WL 1779982, (E. D. Va. Apr. 29, 2010).

Here, because there was a facially valid warrant issued for the plaintiff's arrest, Davis's claim can only be a § 1983 "malicious prosecution" claim under the Fourth Amendment. To state such a claim, "a plaintiff must allege that the defendant  (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d

9

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

636(4th Cir. 2012) (citing <u>Durham v. Horner</u>, 690 F.3d 183, 188 (4th Cir. 2012)).

**a. Lt. Barnhart**

 **i.  Plaintiff's arrest**

  The gravamen of Davis's § 1983 claim against Lt. Barnhart is that he had no probable cause when he arrested Davis on June 19, 2010. The defendants argue that Lt. Barnhart is shielded from liability under the doctrine of qualified immunity.  (Dkt. No. 28 at 9).

  In general, the doctrine of qualified immunity protects officers like Lt. Barnhart from liability stemming from the performance of their job functions so long as the officers' actions do not violate established constitutional or statutory rights of which a reasonable person would have known. <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001)..  "Qualified immunity protects law enforcement officers from liability for "bad guesses in gray areas" and ensures that they will be held liable only for violating bright line rules." <u>Hill v. Crum</u>, ---F 3d.---, 2013 WL 4082271 (4th Cir. 2013). The proper qualified immunity analysis is parsed into two inquiries.  The first inquiry is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

show the officer's conduct violated a constitutional right?" <u>Katz</u>, 533 U.S. at 201.  The second inquiry is whether the constitutional right violated "was clearly established in the specific context of the case — that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." <u>Figg v. Schroeder</u>, 312 F.3d 625, 635 (4th Cir. 2002) (internal quotation marks omitted).

Davis argues that Lt. Barnhart is not entitled to qualified immunity for two reasons: first, he did not conduct a reasonable investigation prior to seeking an arrest warrant; second, he omitted material information from his affidavit in support of the warrant. (Dkt. No. 25 at 4-17). According to Davis, these two factors led to his arrest without probable cause.

**1) Reasonableness of Barnhart's Investigation**

Davis argues that Lt. Barnhart's investigation was "grossly deficient and his report failed to include facts that he knew or should have known." (Dkt. No. 25 at 4).  The defendants, however, point out that Davis has failed to show how Lt. Barnhart's investigation was so inadequate that it lead to a violation of his constitutional rights.  (Dkt. No. 28 at 7).

Where, as here, the alleged Fourth Amendment violation involves a seizure pursuant to a warrant, the fact that a neutral

11

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner in performing their investigation. United States v. Leon, 468 U.S. 897, 922-923 (1984). Nonetheless, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional seizure does not end the inquiry into objective reasonableness. Rather, the Supreme Court has recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In other words, if a well-trained officer in the defendant's position would have known that his affidavit failed to establish probable cause and that he, therefore, should not have applied for the warrant, then the application was not objectively reasonable, and such officer would not be entitled to the defense of qualified immunity. See id. at 343-45. This "shield of immunity" otherwise conferred by the warrant, id., at 345, is lost "[o]nly *where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable*." Malley, 475 U.S. at 344-45. (emphasis added). The Fourth Circuit has observed that "the question is not whether there actually was probable cause for the [] warrant . . . but *whether an objective*

DAVIS V. CITY OF SHINNSTON, ET AL.                          1:12CV53

MEMORANDUM AND OPINION

*law officer could reasonably have believed probable cause to exist.*" Gomez, 296 F.3d at 261. (emphasis added).

Davis uses the fact that Lt. Barnhart did not interview him or his employees to assert that the investigation was inadequate and unreasonable.  However,

> the failure to pursue a potentially exculpatory lead -
> standing alone - is not determinative. [Clipper v.
> Takoma Park, 876 F.2d 17, 20 (4th Cir. 1989)]. Although
> an officer may not disregard readily available
> exculpatory evidence of which he is aware, the failure
> to pursue a potentially exculpatory lead is not
> sufficient to negate probable cause. Smith v. Reddy,
> 101 F.3d 351, 357 (4th Cir. 1996) (citing Torchinsky v.
> Siwinski, 942 F.2d 257, 264 (4th Cir. 1991)).
> Reasonable law enforcement officers are not required to
> "exhaust every potentially exculpatory lead or resolve
> every doubt about a suspect's guilt before probable
> cause is established." Torchinsky, 942 F.2d at 264
> (citing Krause v. Bennett, 887 F.2d 362, 371 (2d Cir.
> 1989) ("[P]robable cause does not require an officer to
> be certain that subsequent prosecution of the arrestee
> will be successful.")).

Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000).

Despite the fact that he did not interview either Davis or his employees, Lt. Barnhart possessed enough evidence to reasonably assume that probable cause existed to seek Davis's arrest. He visited the Herndons' house, where he not only spoke with them about Davis's failure to complete the contract but also looked over the house and observed that the incomplete work. Moreover, Davis

13

DAVIS V. CITY OF SHINNSTON, ET AL.                              1:12CV53

MEMORANDUM AND OPINION

has acknowledged that he did not, in fact, complete his side of the bargain with the Herndons.

Furthermore, the contours of the crime with which Davis was charged - W. Va. Code § 61-3-24 - are nebulous at best. The statute criminalizes obtaining money or property by false pretenses.  The Supreme Court of Appeals, however, has noted repeatedly the similarity - and the potential for confusion - between this crime and ordinary civil wrongs for breach of contract.  In Kennedy v. State, 342 S.E.2d 251, 254-56 (W. Va. 1986), for instance, it stated:

> We recognize that in situations involving a substantial failure to perform some promise there is justifiable concern over confusing criminal conduct with ordinary breach of contract. However, with this concern in view this Court emphasized in Moore that in order to sustain a criminal conviction "[t]he fraudulent intent at the time of the making of the false promise must be shown by 'something more than mere proof of nonperformance or actual falsity.'" 273 S.E.2d at 825. Requiring the State to prove beyond a reasonable doubt the existence of fraudulent intent at the time of the promise sufficiently delineates the difference between the criminal and civil wrongs. In this regard, although the circumstances involved in the instant case and the Moore decision are somewhat similar, we do observe that the charges against the petitioner appear to rest upon "thinner" evidence, particularly with respect to proof of fraudulent intent contemporaneous with the monetary transactions. Nevertheless, the conduct alleged by the State is clearly covered under the statute, and matters of proof of such conduct are best left for review upon a full trial record. There has been a bona fide complaint to the prosecutor, police investigation, and indictment by a grand jury. The petitioner's primary

14

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

>course is to litigate his guilt or innocence before a
>jury, rather than engage this Court in interlocutory
>review of essentially factual evidentiary matters. We
>find no "substantial, clear-cut, legal errors" in the
>petitioner's first claim warranting extraordinary
>relief.

Given the murky nature of W. Va. Code § 61-3-24, it was not
unreasonable for Lt. Barnhart to believe that Davis was in
violation of West Virginia's criminal law for not performing his
contract.

Moreover, the advice Lt. Barnhart sought and received from APA
Hall before he obtained a warrant for Davis's arrest further
illustrates that his actions were not unconstitutional.  Although
Davis attempts to characterize Lt. Barnhart's request to Hall as
incomplete, the defendants have effectively negated this argument.
Both Hall and Lt. Barnhart provided affidavits establishing that
Lt. Barnhart gave Hall the majority of his investigatory material,
including: "[t]he statements of Chris and Tina Herndon, copies of
calendar dates, copies of payments and statements, the results of
building inspection conducted by Code Enforcement Officer Rick
McElroy, the initial proposal from the Plaintiff, the new estimate
to finish the job, and two CD-Rs consisting of pictures of the
victims' home before, during, and after the work performed by the
Plaintiff." (Dkt. No. 28 at 2-3).

15

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

As noted by the Fourth Circuit, an officer's conference with an assistant state's attorney before seeking criminal charges "weighs heavily toward a finding that [the officer] is immune," even if he in fact lacked probable cause to charge the suspect with a crime, unless the officer "provided misleading information to the [state's] attorney." Wadkins v. Arnold, 214 F.3d 535, 541-42 (4th Cir. 2000); see also Pritchett, 973 F.2d at 316 ("[T]he most obvious possibility [of exceptional circumstances supporting qualified immunity despite the violation of a clearly established constitutional right] is mistaken official advice by legal counsel."); accord Buonocore v. Harris, 134 F.3d 245, 253 (4th Cir. 1998) (although reliance on advice of counsel alone does not constitute "extraordinary circumstance," reliance on the advice of counsel is a factor to be considered).

Here, Davis does not allege that Lt. Barnhart supplied APA Hall with incorrect information, only that the information regarding his investigation was incomplete. Despite this allegation, APA Hall still concluded that the information he had received was sufficient to advise Lt. Barnhart there was probable cause to obtain an arrest warrant. Thus, the circumstances surrounding Lt. Barnhart's investigation do not support Davis's

DAVIS V. CITY OF SHINNSTON, ET AL.                           1:12CV53

MEMORANDUM AND OPINION

contention that "no reasonably competent officer would have concluded that a warrant should issue." Malley, 475 U.S. at 341.

### 2) Sufficiency of Lt. Barnhart's Affidavit

Davis also argues that Lt. Barnhart is not entitled to qualified immunity because he omitted material information from his affidavit in support of the arrest warrant. (Dkt. No. 25 at 4-27). Whether omissions in a warrant application rise to the level of a constitutional claim is guided by Franks v. Delaware, 438 U.S. 154 (1978); see Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007) (extending Franks to § 1983 claims). Franks contains a two-prong test:

(1) First, a plaintiff must allege that defendants "knowingly and intentionally or with a reckless disregard for the truth" either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the affidavits misleading. See Franks, 438 U.S. at 155-56; Miller, 475 F.3d at 627. With respect to omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." Miller, 475 F.3d at 628 (citing Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003)); see also Wilson, 212 F.3d at 788. A plaintiff's "allegations of negligence or innocent mistake" by a police officer will not provide a basis for a constitutional violation. Franks, 438 U.S. at 171.

(2) Second, a plaintiff must demonstrate that those "false statements or omissions [are] 'material,' that is, 'necessary to'" a neutral and

17

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

disinterested magistrate's finding of probable cause. Miller, 475 F.3d at 628 (quoting Franks, 438 U.S. at 155–56).

Davis alleges that the complaint left out details known to Lt. Barnhart when he made the complaint:

(1)   Most of the tasks required by the first contract and a large portion of those required by the second contract had been completed;

(2)   The work performed on the home was plainly visible from the street;

(3)   "The proposal indicated that $1,100 was what the gutter would cost, which is the approximate amount left unpaid with regard to the first contract. Accordingly, Chris and Tina Herndon did not pay for anything they did not receive with regard to the first contract." (cites Davis's proposal to the Herndons and his own deposition testimony);

(4)   Chris Herndon contacted the State Police and was told that the matter was civil in nature following the State Police Officer's conversation with Plaintiff – a conversation that Defendant Officer Barnhart never had in the course of his investigation;

(5)   Plaintiff was not interviewed in connection with the matter; nor were any of his employees or subcontractors.

(Dkt. No. 25 at 6). In supplemental briefing, Davis further alleges that Lt. Barnhart's affidavit also left out the following information:

(1)   The alleged victims never requested their money back from Plaintiff;

(2)   Plaintiff had a valid contractors' license;

18

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

    (3)   Defendant Herndon's daughter-in-law accused Plaintiff of sexual advances while he was on the job site;

    (4)   Plaintiff and Defendant Herndon's son had a prior controversial work history;

    (5)   The state police officer that was on the scene following the alleged victims' first report o an issue with Plaintiff advised that the matter was civil, not criminal, in nature;

    (6)   That Plaintiff would have been put in jail on a parole violation in the event of his arrest for these matters.

(Dkt. No. 41 at 7-8).

The Fourth Circuit has recently reiterated that "[a]ffiants are not required to include every piece of exculpatory information in affidavits." Chalmers, 703 F.3d at *9; see, e.g., Simmons v. Poe, 47 F.3d 1370, 1384 (4th Cir. 1995) (finding affiant's omission of facts inconsistent with a suspect's guilt from an affidavit "was not an attempt to mislead the magistrate" under Franks); United States v. Colkley, 899 F.2d 297, 299-301 (4th Cir. 1990) (holding affiant's omission of the fact that six eyewitnesses failed to identify a criminal suspect in a photo array did not satisfy the first Franks prong absent evidence that the affiant possessed "the requisite intent to mislead").

Davis's evidence establishes neither an intent to deceive on the part of Lt. Barnhart nor recklessness. Nor does it establish

DAVIS V. CITY OF SHINNSTON, ET AL.                        1:12CV53

MEMORANDUM AND OPINION

that the omitted information would negate a finding of probable cause.  In fact, most of the information allegedly left out of Lt. Barnhart's affidavit was largely extraneous. For example, Lt. Barnhart did provide APA Hall with pictures and contracts illustrating what work had been completed by Davis, what was left, and what was its estimated cost, all of which gave the Prosecutor sufficient information to pursue charges against Davis. In fact, APA Hall testified that he considered Lt. Barnhart's investigation to be adequate, and stated that he had received all relevant information from Lt. Barnhart. (Dkt. No. 42-2 at 12-13).  APA Hall further stated that the information he had received was sufficient for a "prima facie case" against Davis . Id.  Thus, Lt. Barnhart's omissions did not violate any of Davis's constitutional rights.

### iii.  Plaintiff's Subsequent Prosecution and Incarceration

Davis also alleges that Lt. Barnhart is liable for his subsequent prosecution and incarceration, and the constitutional violations that arose from them.  (Dkt. No. 25 at 6-7).  However, even if Barnhart had committed a violation when he arrested Davis, his liability would be cut off at the prosecution stage due to the independent actions of subsequent decision makers, namely APA Hall and the grand jury.

20

DAVIS V. CITY OF SHINNSTON, ET AL.                          1:12CV53

MEMORANDUM AND OPINION

"[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." Evans, 703 F.3d at 636.   Accordingly, subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure. Id. (citing Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000). Such "intervening acts of other participants in the criminal justice system" insulate a police officer from liability. Id. (citations omitted).

Nevertheless, police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances:

> [O]fficers may be liable when they have lied to or misled the prosecutor, see, e.g., Sykes v. Anderson, 625 F.3d 294, 317 (6th Cir. 2010); Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988); Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988); failed to disclose exculpatory evidence to the prosecutor, see, e.g., Dominguez v. Hendley, 545 F.3d 585, 590 (7th Cir. 2008); Sanders v. English, 950 F.2d 1152, 1159–60 (5th Cir. 1992); or unduly pressured the prosecutor to seek the indictment, cf. Beck, 527 F.3d at 870.
>
> Stated differently, a police officer is not liable for a plaintiff's unlawful seizure following indictment "in the absence of evidence that [the officer] misled or pressured the prosecution." Wray, 490 F.3d at 195 (emphasis added); see also Snider v. Lee, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring) ("A law enforcement officer who presents all relevant probable

21

> cause evidence to a prosecutor . . . is insulated from a malicious prosecution claim where such intermediary makes an independent decision . . . unless the officer [1] concealed or misrepresented facts or [2] brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne."); Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.").

> Id.

Here, there is no indication that Lt. Barnhart unduly influenced APA Hall to pursue an indictment of Davis. Nor does Davis provide any evidence that Lt. Barnhart either misled, misrepresented, or omitted pertinent information in his communications with APA Hall. Moreover, as already noted, APA Hall provided two affidavits confirming that it was his own independent decision to seek Davis's indictment.

Davis's allegations that Lt. Barnhart provided misleading testimony to the grand jury which helped lead to his prosecution are precluded by Rehberg v. Paulk, 132 S.Ct. 1497, 182 L.E.2d 593 (2012).[2] In Rehberg, the Supreme Court clarified that the absolute

---

[2] Rehberg only immunizes Barnhart from liability based on his grand jury testimony. Rehberg,132 S.Ct. at 1499 (noting that the grant of immunity to grand jury witnesses "may not be circumvented by claiming that a grand jury witness conspired to present false testimony, *or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.")* (emphasis added). Thus, claims

**DAVIS V. CITY OF SHINNSTON, ET AL.**                    **1:12CV53**

<u>MEMORANDUM AND OPINION</u>

immunity from § 1983 claims given to trial witnesses applies "with equal force" to grand jury witnesses, including police officers. This immunity applies even if falsified information or perjury is alleged. <u>Id</u>. at 1505-07. In light of <u>Rehberg</u>, Lt. Barnhart thus is immune from any liability under § 1983 for his grand jury testimony. As such, there can be no direct nexus between his actions and Davis's subsequent arrest and prosecution. Lt. Barnhart's potential liability, therefore, does not extend to the prosecution and incarceration stage. Thus, for these reasons, Davis's § 1983 claims fail as a matter of law.

**b.  Debra Herndon**

Davis bases his § 1983 claim against Debra Herndon on a theory of supervisory liability . His complaint implies that, under this theory, she is liable for the actions she undertook in her role as City Manager of Shinnston in advising Lt. Barnhart to pursue an arrest of Davis based on the allegations made by her son, Chris, and his wife, Tina. (Complaint ¶ 20).

Within the § 1983 context, the comparatively lenient derivative liability theory of respondeat superior, which imposes liability on the superior automatically by virtue of the employment

---

against Barnhart that do not deal with his grand jury testimony are not precluded by <u>Rehberg</u>.

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

structure, is inapplicable. Monell v. Dep't of Soc. Servs., 436
U.S. 658, 692–94 (1978). Thus, a properly pled claim for
supervisory liability must go beyond a theory that the superior is
liable merely by virtue of his office.  Rather, the allegations
must be sufficient to demonstrate a plausible nexus or affirmative
link between the supervisor's actions and the constitutional
deprivation. Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d
Cir. 2010).

As explained by the Fourth Circuit, "the theory of supervisory
liability [under § 1983] arises from the obligation of a
supervisory law officer to insure that his subordinates act within
the law." Randall v. Prince George's County, 302 F.3d 188, 203 (4th
Cir. 2002). Accordingly, supervisory liability may arise where: (1)
the supervisor had actual or constructive knowledge that his
subordinate was engaged in conduct that posed a pervasive and
unreasonable risk of constitutional injury to citizens like the
plaintiff; (2) the supervisor's response to that knowledge was so
inadequate as to show "deliberate indifference" to, or tacit
authorization of, the alleged offensive practices; and (3) there
was an affirmative causal link between the supervisor's inaction
and the particular constitutional injury suffered by the plaintiff.
Id. at 206; Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

24

**DAVIS V. CITY OF SHINNSTON, ET AL.**                    1:12CV53

<u>MEMORANDUM AND OPINION</u>

None of these circumstances is present here.  First, inasmuch as this Court has already found that Lt. Barnhart did not commit a constitutional violation, Debra Herndon cannot be liable under a derivative liability theory for allegedly violating Davis's constitutional rights.  Furthermore, even if Lt. Barnhart had violated Davis's constitutional rights, there still is insufficient evidence to establish that Debra Herndon is liable under § 1983. In her capacity as City Manager, she conveyed her son and daughter-in-law's complaints about Davis's work to Lt. Barnhart, suggesting that he investigate it further. Davis has proffered no evidence that she was involved in this matter beyond that.

Moreover, her relationship with Chris and Tina Herndon notwithstanding, Debra Herndon was acting within her official duties when she requested that Lt. Barnhart investigate the complaints against Davis. Section 19 of the City of Shinnston Charter gives the City Manager "supervision and control" over the administration of the police department. (Dkt. No. 19-3 at 38). Thus, by asking Lt. Barnhart to investigate the complaints against Davis, Herndon was acting well within the realm of her duties as City Manager.

The Supreme Court of the United States has held that "government officials performing discretionary functions generally

25

DAVIS V. CITY OF SHINNSTON, ET AL.                          1:12CV53

MEMORANDUM AND OPINION

are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Crawford-El v. Britton, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.E.2d 759 (1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 73 L.E.2d 396 (1982)). In this instance, since Davis's statutory and constitutional rights were not infringed by his arrest, Debra Herndon's exercise of her discretionary functions did not violate any clearly established statutory or constitutional right of his. Davis's § 1983 claims against Debra Herndon thus fail as a matter of law.

c. City of Shinnston

    In order to establish municipal liability under 42 U.S.C. § 1983, it is necessary for Davis to prove the existence of an official policy or custom that proximately caused the deprivation of his rights. See Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 425 (1997); Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994) ("[P]laintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the

26

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

deprivation of their rights."); <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1386-87 (4th Cir. 1987).

Municipal customs, both formal and informal, are established by persistent, widespread practices of municipal officials, whether specifically authorized or not, that are so permanent and well settled so as to have the force of law. <u>Bd. of Comm'rs of Bryan Cnty.</u>, 520 U.S. at 403-04. These practices are attributable to a municipality when they become so frequent in occurrence that actual or constructive knowledge is implied. <u>Id</u>. "Thus, a prerequisite to municipal liability is the finding that an official policy or custom existed." <u>Semple v. City of Moundsville</u>, 195 F.3d 708, 712 (4th Cir. 1999).

Here, Davis argues that Shinnston (1) has a policy of allowing their employees to participate in decisions with regard to the investigation of crimes that occur against their family members; (2) has a policy of failing to consider the complaint history, including the deposition of any such complaints; (3) failing to accurately assess the veracity, character, and improper motives of persons alleging to be victims; (4) using the violation of said rights to obtain an indictment when probable cause is tenuous or lacking; (5) failing to properly train and/or effectively

27

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

discipline officers who have engaged in conduct in violation of citizens' constitutional rights.[3] (Complaint ¶ 33).

Davis, however, has adduced no evidentiary support for these alleged "policies" other than the facts of this case. "[P]roof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom." Semple v. City of Moundsville, 195 F.3d 708, 714 (4th Cir. 1999) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion)). Furthermore, the Court has found that his constitutional rights were not violated by the single incident Davis cites in his

---

[3]   In order for a municipality to be liable pursuant to § 1983 under a theory of deficient training, those deficiencies in police training policies that result from policymaker fault must rise to at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction. Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987); Jordan, 15 F.3d at 341. "Only if, 'in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' can a municipality reasonably 'be said to have been deliberately indifferent to that need.'" Jordan, 15 F.3d at 341 (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Therefore, a plaintiff must point to a specific deficiency an not a general ineffectiveness of the training. Spell, 824 F.2d at 1390. The deficiency also must make the occurrence of the specific violation a "reasonable probability rather than a mere possibility" when the exigencies of police work are considered. Spell, 824 F.2d at 1390. Thus, a plaintiff must establish a direct causal connection between specific deficiencies and a specific injury. McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1198 (4th Cir. 1996).

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

complaint. Thus, his § 1983 claim against the City of Shinnston fails as a matter of law.

## 2. Conspiracy

Inasmuch as the conspiracy claim in Davis's complaint is predicated upon the constitutional claims alleged in Count I, it rises or falls with Count I. Because the Court has granted defendants' motion for summary judgment as to Count I, it therefore also grants summary judgment to them on Davis's conspiracy claim.

## B. *State Law Claims*

## 1. Malicious Prosecution

Davis's state law malicious prosecution claim fails as a matter of law because he is unable to establish all of the elements required under West Virginia law for a *prima facie* case of malicious prosecution. These include that a plaintiff show "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." Truman v. Fidelity & Casualty Co. of New York, 146 W.Va. 707, 123 S.E.2d 59 (1961). If Davis fails to prove any of these elements, he can not recover. Further, Davis must establish malice and want of probable cause by

DAVIS V. CITY OF SHINNSTON, ET AL.                     1:12CV53

<u>MEMORANDUM AND OPINION</u>

a preponderance of the evidence.  <u>Morton v. Chesapeake and Ohio Ry.
Co.</u>, 184 W.Va. 64, 399 S.E.2d 464 (1990).

"In civil malicious prosecution actions, the issues of malice
and probable cause become questions of law for the court where
there is no conflict of evidence or where there is only one
inference to be drawn by reasonable minds." <u>Morton</u>, 184 W.Va. at
67. "Although malice may be inferred by a lack of probable cause,
the question of the existence of probable cause depends on the
defendant's honest belief of guilt on reasonable grounds." <u>Id</u>.
"Probable cause for instituting a prosecution in such a state of
facts and circumstances known to the prosecutor personally or by
information from others as would in the judgment of the court lead
a man of ordinary caution, acting conscientiously, in the light of
such facts and circumstances, to believe that he person charged is
guilty." <u>Id</u>.

Here, as already detailed in the Court's § 1983 analysis, Lt.
Barnhart had probable cause to seek an arrest warrant in Davis's
case. He sought the warrant only after speaking with the Herndons
about Davis's failure to complete the contract at issue. He also
had the opportunity to look at the Herndons' house and observe that
Davis's work was incomplete. He presented this information to

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

Magistrate Warren Davis who found probable cause to issue an arrest warrant for Davis.

Because Davis has failed to establish a lack of probable cause as a matter of law, no malice can be inferred. Furthermore, Davis would have to provide evidence illustrating malice on the part of Lt. Barnhart, even if probable cause was not found. No facts in this case support such a finding, however. Davis has not provided the Court with any evidence to suggest that Lt. Barnhart had wrongful intent, withheld potentially exculpatory evidence, or wrongfully urged the prosecution to pursue charges when seeking an arrest warrant for Davis.

Because Davis has failed to provide sufficient evidence of a lack of probable cause or maliciousness in the institution or prosecution of his criminal case, he has failed as a matter of law to state a claim for malicious prosecution under West Virginia law.

## 2. Intentional or Reckless Infliction of Emotional Distress

Davis's intentional and reckless infliction of emotional distress claim also fails as a matter of law because he is unable to establish all of the elements required to establish a *prima facie* case as to this claim. In order to establish a *prima facie* case of intentional or reckless infliction of emotional distress, Davis must establish the following four elements:

31

DAVIS V. CITY OF SHINNSTON, ET AL.                     1:12CV53

MEMORANDUM AND OPINION

> (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, 202 W.Va. 369, 375 (1998).

Davis has failed to establish that either Herndon or Lt. Barnhart's conduct was "atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency." Id. That Debra Herndon, in her capacity as City Manager of Shinnston, conveyed the Herndons' complaints to Lt. Barnhart, in no way establishes that she acted in an "atrocious" or "intolerable" manner in doing so. Furthermore, Lt. Barnhart acted reasonably in conducting his investigation and pursuing an arrest warrant for Davis. He conducted a thorough and fair investigation and presented his findings to APA Hall for review. His actions were all within the bounds of his duties as a Lieutenant on the Shinnston police force.

Davis also is unable to establish that "the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress

32

DAVIS V. CITY OF SHINNSTON, ET AL.                    1:12CV53

MEMORANDUM AND OPINION

would result from his conduct." Id.  The evidence presented by both parties illustrates that both Debra Herndon and Lt. Barnhart acted in accordance with their duties throughout handling this matter. Davis lacks sufficient evidentiary support to establish that their actions were either taken with reckless disregard or the intent to cause emotional harm to the defendant.

Therefore, since he is unable to establish the elements required for an intentional or reckless infliction of emotional distress claim, Davis has failed as a matter of law to state a claim for intentional or reckless infliction of emotional distress under West Virginia law.

IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** the defendants' summary judgment motion (Dkt. No. 19), **DISMISSES WITH PREJUDICE** Davis's complaint, and **DIRECTS** the Clerk to remove this case from its active docket.

It is **SO ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record by certified mail.

DATED: September 6, 2013

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE

33